UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ATUL GOEL,

            Plaintiff(s),

  v.

vCUSTOMER CORPORATION,

            Defendant(s).

NO. C06-1508MJP

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The above-entitled Court, having received and reviewed:

1. vCustomer's Motion for Summary Judgment (Dkt. No. 46)

2. Response to Defendant's Motion for Summary Judgment (Dkt. No. 48)

3. vCustomer's Reply in Support of Motion for Summary Judgment (Dkt. No. 50)

and all exhibits and declarations attached thereto, makes the following ruling:

IT IS ORDERED that the motion is PARTIALLY GRANTED and PARTIALLY DENIED. Defendant's motion to dismiss Plaintiff's claims under RCW 49.52.050 is GRANTED; the remainder of the motion is DENIED.

**Background**

Defendant vCustomer Corporation ("vCustomer") is a small corporation headquartered in Kirkland, Washington which provides customer support through call centers located in India. Plaintiff Goel is an Indian citizen who was hired by Defendant's Indian sub-corporation (vCustomer Services India Private Ltd.) in December 2004. When he moved to England in June 2005, he continued to be employed by the sub-corporation while attempting to develop a market for vCustomer's services among British companies.

**ORDER ON MTN
FOR SUMM JMT - 1**

In January 2006, the parties executed an Independent Overseas Contractor Agreement ("Independent Contractor Agreement") which resulted in Plaintiff being paid by the defendant U.S. company and being identified as an independent contractor. Kumar Decl., Exh. 1 §6. Under the agreement, either party had the right to terminate the relationship at their sole discretion. Id. at §7(a). In April 2006, Sanjay Kumar (CEO of vCustomer) exercised that right and informed Plaintiff that he was terminating his employment by the corporation. Kumar Decl., ¶ 4.

Following that decision, the parties executed two further agreements: a Separation Agreement and a Broker Agreement. Kumar Decl., Exh's 2 and 3. The Separation Agreement stated that Plaintiff's "last day of service for the company is April 4, 2006 (the 'Separation Date')." Exh. 2, §1. Nevertheless, Plaintiff was to continue to work on closing some deals that he had been working on at the time that the Separation Agreement was entered into. Specifically, the Broker Agreement provided that, during a fixed, 10-week period (Exh. 3, §§1, 5), Plaintiff would attempt to close deals with ten potential customers identified in an attachment to the document. He was to receive no regular salary, but the agreement did contemplate two £1500 payments contingent upon his submission of weekly written reports. Id., §3.

The Broker Agreement further provided:

1. Beginning 04/05/06 thru 06/14/06, you will be an overseas Sales Broker to vCustomer Corporation ("Company"). During this time, you will concentrate on closing new sales for the Company in the U.K.

. . .

4. Any Sales Contracts that are signed by the President of vCustomer Corporation, that are attributable to your efforts will result in a five percent commission for the first twelve months of the contract.

Id., §§1, 4.

**ORDER ON MTN FOR SUMM JMT - 2**

1   One of the potential customers with whom Plaintiff was attempting to negotiate a deal for vCustomer was Express Gifts, a large English mail order company. However, the Broker Agreement expired (and was not renewed) before any agreement was executed with Express Gifts. Plaintiff set up a meeting with Express Gifts representatives for June 15, 2006, a meeting which he was "uninvited" from following the expiration of the Broker Agreement period. The Express Gifts deal was not signed until August 14, 2006, approximately two months after the end date of the Broker Agreement.

Plaintiff requested the agreed-upon commission from Defendant. When that commission was not forthcoming, he initiated this lawsuit for breach of contract in state court. Defendant removed the lawsuit to federal court, and Plaintiff thereafter amended his complaint to include a cause of action for violation of RCW 49.52.050. Through this motion for summary judgment, Defendant seeks dismissal of both of those causes of action. As explained below, the Court grants Defendant's motion regarding the state law cause of action under RCW 49.52.050, but denies the motion to dismiss the breach of contract claim.

**Discussion**

Standard of Review

Summary judgment is not warranted if a material fact exists for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995). The underlying facts are viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Summary judgment will not lie if. . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970). This can be done be either producing evidence negating an essential element of plaintiff's claim, or by showing that plaintiff does not have enough evidence of an essential element to carry its ultimate

**ORDER ON MTN
FOR SUMM JMT - 3**

1   burden at trial.  Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc., 210 F.3d 1099, 1103 (9th Cir.
2   2000).

3   However, once the moving party has met its initial burden, the burden shifts to the nonmoving
4   party to establish the existence of an element essential to that party's case, and on which that party will
5   bear the burden of proof at trial.  Celotex Copr. v. Catrett, 477 U.S. 317, 323-24 (1986).  To
6   discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have
7   evidence showing that there is a genuine issue for trial.  Id.. At 324.  In considering a motion for
8   summary judgment, however, "the court must draw all reasonable inferences in favor of the
9   nonmoving party, and it may not make credibility determinations or weigh the evidence." Anderson,
10  477 U.S. at 250-51.  Additionally, "at the summary judgment stage the judge's function is not . . . to
11  weigh the evidence . . . but to determine whether there is a genuine issue for trial."  Liberty Lobby,
12  477 U.S. at 249.

13  Breach of contract

14  Defendant's position is that the language of the Broker Agreement unequivocally establishes
15  that, in order for Plaintiff to qualify for a commission, the contract must have been signed during the
16  10-week term of the agreement.  Defendant argues, and Plaintiff does not dispute, that the Express
17  Gifts deal was not finalized until after the expiration of the Broker Agreement.

18  Courts may determine the intent of the parties to a contract as a matter of law.  Hearst
19  Communications, Inc. v. Seattle Times, 154 Wn.2d 493, 510 (2005).  The rule in Washington is that
20  the court shall "attempt to determine the parties' intent by focusing on the objective manifestations of
21  the agreement, rather than on the unexpressed subjective intent of the parties. We impute an intention
22  corresponding to the reasonable meaning of the words used." Id. at 503.   Finally, any ambiguities in
23  the document are to be construed against the drafter of the instrument (in this case, vCustomer).  Riss
24  v. Angel, 80 Wn.App. 553, 556 (1996).

25
26  **ORDER ON MTN**
    **FOR SUMM JMT - 4**

1    The Court finds that the Broker Agreement does not clearly state that the entitlement to
2    commissions extends solely to those contracts finalized during the 10-week contract period. The
3    document speaks only to "[a]ny Sales Contracts that are signed by the President of vCustomer
4    Corporation, that are attributable to your efforts" (Exh. 3, §4), and says nothing about when those
5    contracts must be signed in order qualify Plaintiff for a commission.

6    Defendant's argument that the 10-week contract period is somehow "meaningless" unless
7    interpreted as a limitation upon Plaintiff's eligibility for commissions is not persuasive; the 10-week
8    period functions equally effectively as a cutoff point beyond which Plaintiff would not be permitted to
9    undertake any new negotiations with potential vCustomer clients. Nothing in the extrinsic evidence
10   submitted by Defendant suggests in any fashion that it was the intent or understanding of the parties
11   that only contracts finalized during the contractual period would result in commissions paid to
12   Plaintiff.

13   The operative language of the Broker Agreement, as Plaintiff points out, is whether the sales
14   contract is "attributable" to Plaintiff's efforts; i.e., would the Express Gifts deal have closed (whenever
15   it was closed) without the work done by Plaintiff during the 10-week contractual period? That is
16   clearly a disputed question of material fact which the Court finds inappropriate for resolution by
17   summary judgment. Defendant's motion will therefore be denied as far as it concerns Plaintiff's
18   breach of contract claim.

19   State law claim

20   Plaintiff's second cause of action alleges that Defendant's refusal to pay a commission on the
21   Express Gifts contract is a willful withholding of wages in contravention of RCW 49.52.050, and that
22   Plaintiff is entitled to double damages under RCW 49.52.070 as a result. As a matter of law, this
23   claim fails on two grounds:

**ORDER ON MTN**
**FOR SUMM JMT - 5**

1. *Plaintiff was not an "employee" within the meaning of the statute*: The Separation Agreement signed by Plaintiff states unequivocally that "his last day of service for the Company is April 4, 2006 (the 'Separation Date')." (Exh. 2, §1.) Further, Plaintiff himself has testified as to his understanding that, following the execution of the Separation Agreement, he was no longer an employee of the Company. (Rosenberger Decl., Goel Dep. at 44:11-13.) Washington's litmus test for "employee v. independent contractor" is "whether the alleged employer has the right of direction and control over the alleged employee as to methods and details of doing the work." Risher v. Dept. of Labor & Indus., 55 Wn.2d 830, 834 (1960). Defendant denies having any such rights of direction and control following the execution of the Broker Agreement. Plaintiff has failed to adduce any evidence to the contrary.

   Plaintiff's characterization of Defendant's refusal to renew the Broker Agreement following its end date as a "termination" does not make it so; the contract merely expired. Plaintiff was an "ex-employee" of vCustomer as of April 4, 2006; at the expiration of the Broker Agreement, he was simply a party to a contract which was no longer in effect.

2. *Plaintiff is not entitled to exemplary damages under RCW 49.52.070*: As the case law makes clear, exemplary damages under this statute will not be awarded where there is a "bona fide" dispute between the claimant and the employer; "bona fide" disputes exist wherever there is "a 'fairly debatable' dispute over whether an employment relationship exists, or whether all or a portion of the wages must be paid." Schilling v. Radio Holdings, Inc., 136 Wn.2d 152, 161 (1998). The Court finds that, as between the parties to this lawsuit, there is a bona fide dispute both as to whether Plaintiff was an

**ORDER ON MTN FOR SUMM JMT - 6**

employee of vCustomer and as to whether he was entitled to the commission he demanded pursuant to the Broker Agreement. Under such circumstances, as a matter of law, there cannot be a finding of a "willful withholding" of wages and therefore no entitlement to exemplary damages under the statute.

Defendant's motion for summary judgment of dismissal will be granted as to Plaintiff's second cause of action.

<u>Motion to strike</u>

In its reply brief, Defendant moves to strike two assertions contained in Plaintiff's declaration: first, that an employee of Express Gifts "told me that Express Gifts would be executing a contract with vCustomer" (Goel Decl., ¶ 9); and, second, that it was "my understanding that [Express Gifts director] Nasser Malik would heed any advice given to him regarding BPO companies by Mr. Goas or Mr. Bowen" (Goel Decl., ¶ 5). The Court agrees with Defendant that these are out of court statements by non-parties offered for the truth of the matter asserted in violation of the hearsay rule, and they will be stricken and disregarded.

Likewise, Plaintiff's citation to two proposed "settlement agreements" offered by vCustomer (Goel Response, p. 8) is impermissible; such offers are inadmissible under FRE 408(a) and they will be disregarded.

## Conclusion

Defendant's motion for summary judgment regarding Plaintiff's contract claim will be denied; there are genuine issues of material fact regarding whether the signing of the Express Gift contract was "attributable" to Plaintiff's efforts under the terms of the Broker Agreement. The motion will be granted as regards Plaintiff's second cause of action under RCW 49.52.050, as Plaintiff was not an employee of Defendant during the period in question and a bona fide dispute exists as to both his

**ORDER ON MTN FOR SUMM JMT - 7**

employment status and his entitlement to a commission under the Broker Agreement. Plaintiff's second claim will be dismissed with prejudice.

The clerk is directed to provide copies of this order to all counsel of record.

Dated: October _18__, 2007

_____
Marsha J. Pechman
U.S. District Judge

**ORDER ON MTN**
**FOR SUMM JMT - 8**